UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LINDSAY TAYLOR,<br>ELAINE TAYLOR, and<br>JEFFREY TAYLOR,<br>Plaintiffs,<br>v.<br><br>SALVATORE ERNA and<br>GODSMACK TOURING, INC.,<br>Defendants and<br>Third-Party Plaintiffs,<br>v.<br><br>ERIC M. SARGENT,<br>Third-Party Defendant. | Civil Action No. 08-10534-DPW |

**MEMORANDUM OF THE DEFENDANTS IN SUPPORT OF THEIR MOTION TO COMPEL THE PRODUCTION OF ALL TEST DATA AND MATERIALS OF PLAINTIFFS' NEUROPSYCHOLOGICAL EXPERT, DR. THOMAS DETERS**

## I INTRODUCTION

Pursuant to Fed. R. Civ. P., Rule 26(a)(2)(B)(ii), the defendants, Salvatore Erna ("Mr. Erna") and Godsmack Touring, Inc. ("Godsmack") (collectively the "defendants"), respectfully move that this Honorable Court grant their motion and issue an Order compelling plaintiffs' expert, Thomas Deters, Ph.D., to provide copies of or access to all raw test data and related testing materials associated with his neuropsychological evaluations (collectively "test materials") of the plaintiff, Lindsay Taylor ("Ms. Taylor").

In support of their motion, defendants state that (1) Fed. R. Civ. P. 26(a)(2)(B)(ii) requires that the written report of the expert "must contain," *inter alia*, "the data or other information considered by the witness in forming [his/her opinions];" (2) applicable standards permit the disclosure of test data and related materials in circumstances such as this (The American Psychology Association Ethical Principles of Psychologists and Code of Conduct, 2002, provides that a psychologist may disclose test data pursuant to a client's release or as required by law or court order); (3) the concerns of Dr. Deters regarding the dissemination of copyrighted or proprietary information can be readily addressed with a non-disclosure agreement or protective order as defendants have proposed; (4) defendants will not be able to determine the methodology employed by Dr. Deters or its reliability without examining the raw test data and corresponding test materials; (5) defendants will not be able to fairly and fully depose or cross examine Dr. Deters regarding his analysis and opinions without the data that forms the bases for his opinions; and (6) defendants continue to be precluded from consulting with their own neuropsychological expert regarding his analysis of the test data and materials (i.e., defendants' expert was provided the test data and materials but was explicitly forbidden by Dr. Deters from sharing them with defendants' counsel).

## II BACKGROUND

This action arises out of a motor vehicle accident that occurred on April 11, 2007 in Methuen, Massachusetts. Ms. Taylor, who was 25 years old at the time, was a rear-seat

passenger in a vehicle that was rear-ended by a vehicle operated by Mr. Erna. Plaintiffs allege that Ms. Taylor suffered severe and permanent brain injuries resulting in cognitive deficiencies, auditory agnosia (a type of hearing impairment), and emotional impairment, and will need full-time residential care for the remainder of her life.

Plaintiffs retained Thomas Deters, Ph.D. as their neuropsychological expert and trial witness in this case. Dr. Deters conducted neuropsychological testing and evaluations of Ms. Taylor on six separate occasions between March 7, 2008 and August 7, 2008. He issued a written report in March 2009 pursuant to the Court's Scheduling Order. The report failed to include the raw data and other materials relating to the testing of Ms. Taylor (see Deters Report attached as Exhibit "A").[1]

Based in considerable part on Dr. Deters' findings, plaintiffs' life care planner, Dr. William Burke, has issued a report wherein he opines that Ms. Taylor will need full-time institutional care at a cost that will exceed Nine Million Dollars.

Upon exchanging expert reports this past spring, the parties agreed to mediate the case prior to taking expert depositions. Prior to the mediation, defendants requested the raw data and test materials from Dr. Deters. Dr. Deters agreed to provide the test materials directly to defendants' expert neuropsychologist, Dr. Faust, but refused to provide a copy to defendants' counsel and specifically advised Dr. Faust that he could not share these materials with counsel.

[1] Pursuant to the Court's Scheduling Order the (non-expert) discovery deadline expired on December 31, 2008. Expert depositions are to be completed by August 1, 2009. Status conferences are scheduled for July 2, 2009 and August 17, 2009.

After the mediation, defendants made another request to plaintiffs' counsel for the test materials of Dr. Deters and proposed a non-disclosure agreement to address his confidentiality and security concerns. (See proposed non-disclosure agreement attached as Exhibit "B.") Plaintiffs would not agree to produce the test materials even with a non-disclosure agreement in place.

## III ARGUMENT

### A. The written report of Dr. Deters fails to comply with the rules of civil procedure.

Fed. R. Civ. P., Rule 26(a)(2)(B)(ii) requires, in regard to the disclosure of expert testimony, that the written report of the expert "must contain," *inter alia*, "the data or other information considered by the witness in forming [his/her opinions]." "The purpose of the Rules of Civil Procedure, and of the Court's instance that parties adhere to the requirements of Rule 26 and the scheduling order, is to facilitate trial on the merits." Reiner v. Warren Resort Hotels, Inc., 2008 WL 5120682 (D.Mont.). "The report 'is intended to set forth the substance of the direct examination' of the expert witness." Schmitt v. Beverly Health and Rehab. Services, Inc., 1997 WL 728133 (D.Kan.) citing Fed. R. Civ. P. 26(a)(2) advisory committee notes (1993 amend.). Under Rule 26, "all parties and the court should possess full information well in advance of trial on any proposed expert testimony or demonstrative evidence." Id. citing Robinson v. Missouri Pac. R.R., 16 F.3d 1083, 1089 n.6 (10th Cir.1994). *See* Kayongo-Male v. South Dakota

State Univ., 2008 WL 2627699 (D.S.D.) (court ordered defendant to produce electronic copy of raw data from defendant's database that defendants' expert relied upon to perform his statistical analysis to "permit plaintiff to adequately prepare for trial." "The Eighth Circuit permits liberal discovery of 'all information disclosed to a testifying expert in connection with his testimony, whether or not the expert relies on the documents and information in preparing his report.'") (citations omitted)

Here, Dr. Deters has provided his raw test data and materials to defendants' expert witness, Dr. David Faust, but has refused to provide this material to counsel and has instructed Dr. Faust not to share the test materials with defendants' counsel or anyone else. As a result, the defendants have been deprived of the ability to review the test results and are limited to Dr. Deters' report. Defendants made numerous requests to plaintiffs for the test materials of Dr. Deters but all requests were refused.

It is clear that Dr. Deters relied on the testing materials and Ms. Taylor's responses/data to those materials in formulating the opinions expressed in his report. Fed. R. Civ. P. 26(a)(2)(B)(ii) explicitly states that the written report of the expert must contain "the data or other information considered by the witness" in forming his opinions. If Dr. Deters felt that he could not, for whatever reason, include test data and materials that he relied upon in formulating his opinions and which he expressed in his 66-page report, plaintiffs should have sought a protective order from the scheduling order and relief from full compliance with Fed. R. Civ. P. 26. Instead, plaintiffs chose not to comply with Rule

26 and withheld the critical data and materials that form the basis of Dr. Deters' opinions. Defendants are now at a tremendous disadvantage, heading into a trial posture, because they have not been fully informed of the bases for Dr. Deters' opinions.

Dr. Deters was previously the subject of a similar motion in a case venued in state court in Massachusetts. In the Superior Court case of Rahman, et al. v. DeAlmeida, et al., MICV2005-0744, Dr. Deters was ordered to produce the test materials and raw data concerning his neuropsychological testing and evaluation of the plaintiff. (See Order attached hereto as Exhibit "C.")[2] Therefore, in a jurisdiction which does not routinely require the production of expert reports, list of published works, list of cases in which testimony was given, or automatically permit expert depositions, the defendants' motion to compel production of the test materials of Dr. Deters was allowed.

The defendants respectfully submit that, in the case at bar, venued in a jurisdiction with more expansive expert disclosure rules and more permissive expert discovery, Dr. Deters should be ordered to produce the test materials to defendants' counsel. *See* Drago v. Tishman Construction Corp. of New York, 4 Misc.3d 354, 356-357, 777 N.Y.S.2d 889 (2004) (in personal injury litigation alleging traumatic brain injury, "the court finds it proper to compel the disclosure of raw data of the multiple tests administered to plaintiff").

In an analogous case from the District Court in Wyoming, Sapone v. Grand

[2] Notably, in that case, plaintiffs' counsel was not opposed to the production of their materials but Dr. Deters nonetheless refused to produce them.

Targhee Inc., 2000 WL 35615926 (D.Wyo.), plaintiff, injured after a fall during a horseback riding lesson, retained eight experts including two neuropsychologists. Although plaintiff provided defendants with reports from both neuropsychologists, defendants were not provided with the raw test data or other documents prepared by plaintiff's experts in the process of their evaluation, though the test data was provided to defendants' expert. The Sapone court allowed defendants' motion to compel the raw test data and found that the conditions imposed by plaintiff's experts that defendants' expert receive the raw data in a sealed envelope with instructions that it not be copied or distributed were "improper and prejudicial to the defendant[s]." Id. The court reasoned that the defendants were "entitled to cross examine plaintiff's expert witnesses on all information considered by these experts to arrive at their ultimate opinions." Id. The plaintiff was ordered to immediately produce the raw data, the background questionnaire, and the test materials pertaining to plaintiff.

Defendants now request that the Court (1) order plaintiffs to fully comply with Rule 26; (2) order the production of the test data and materials (much of the data, consisting of answers to leading questions, may be useless without the accompanying questions and test materials); and (3) order that plaintiffs pay reasonable attorneys fees and costs of defendants in bringing this motion to compel.

**B. A non-disclosure agreement or protective order will address the ethical concerns of Dr. Deters.**

Defendants drafted and proposed a non-disclosure, non-dissemination, non-reproduction, confidentiality agreement with an assurance that all test materials will be returned to Dr. Deters at the conclusion of the litigation, in the form attached hereto as Exhibit "B," but plaintiffs refused to execute the proposed agreement and produce the test materials. Dr. Deters has taken the position that the release and production of the test materials to defendants' counsel, even after he shared same with defendants' expert, would be unethical. For the reasons stated below, the release of such information pursuant to a non-disclosure agreement or protective order will not violate any psychological code of ethics.

In Schmitt v. Beverly Health and Rehab. Services, Inc., 1997 WL 728133 (D.Kan.), the defendant moved to compel production of plaintiff's expert's data or other information considered in forming the expert's opinions. Plaintiff's expert refused to produce the raw data to attorneys for ethical reasons and stated that he would violate contractual obligations if he provided copyrighted psychological tests to counsel. The Schmitt court held that "[e]ntry of a protective order negates any need to consider whether Fed. R. Civ. P. 26(a)(2)(b) requires experts to produce documents containing the data or other information considered in forming their opinions. It also negates any need to determine whether contractual and ethical duties provide a sufficient basis to withhold production of such documents from disclosure." Id. The Schmitt court ordered plaintiff to produce all test

data and test materials to defendant with a protective order that such production should only be used for litigation and not otherwise disclosed. "Entry of such an order appears to satisfactorily resolve the dispute." Id. *See also* Reiner v. Warren Resort Hotels, Inc., 2008 WL 5120682 (D.Mont.) (where neuropsychological experts of both parties refused to disclose test data, court allowed stipulated protective order).

**C. The national association of psychologists permits such disclosure with a client's release or by Court Order.**

Applicable standards in the field of psychology permit the disclosure of test data and test materials in circumstances such as this. The American Psychology Association Ethical Principles of Psychologists and Code of Conduct, 2002, provides that a psychologist may disclose test data pursuant to a client's release or as required by law or court order. *See* APA Code of Conduct, standard 9.04, attached hereto as Exhibit "D." In fact, neuropsychologists are *instructed* to release test data pursuant to a client's release unless harm, misuse, or misrepresentation of the materials may result, and further provides that test data may be released as required by law or court order. *See* Test Security: An Update, Official Statement of the National Academy of Neuropsychology, Approved by the NAN Board of Directors 10/13/2003 ("NAN Security Statement"), attached hereto as Exhibit "E." Here, defendants seek copies of or access to the test materials[3] as well as the test data. The test data may, in many respects, be misleading or not useful without the associated test materials.

[3] Test materials include manuals, instruments, protocols, and test questions or stimuli used in the testing. *See* APA Code of Conduct, standard 9.11, at Exhibit "D."

The Neuropsychology Academy's stated reason for non-disclosure of the test materials is that the uniqueness of the materials must be protected to prevent any potential test subjects from preparing for the tests. *See* NAN Security Statement attached as Exhibit "E." However, NAN's prohibition concerns ***uncontrolled*** test material release to non-psychologists. NAN, recognizing that neuropsychologists often receive requests from attorneys for copies of test materials, stated in their NAN Security Statement that the psychologist should take reasonable steps to maintain test security but that "different solutions for problematic requests for the release of test materials are possible." Id. Such solutions include "protective arrangements or protective orders from the court." Id. NAN discourages the release of test materials but does authorize the release of same when neuropsychologists "take appropriate and reasonable steps to arrange conditions for release that ensure adequate safeguards." Id.

In the instant case, defendants have taken appropriate and reasonable steps to ensure test material security by their proposed non-disclosure agreement but plaintiffs and Dr. Deters have refused to release same nevertheless. (In fact, such arrangements are routinely made in all types of litigation to protect proprietary information and trade secrets.) By the issuance of a protective order, the court could allow defendants to gain access to the requested information to adequately prepare for trial while addressing plaintiffs' concerns regarding the dissemination of that information.

**D. <u>Defendants will not be able to fully and fairly analyze Dr. Deters' methodology without the requested information</u>.**

While the written report of Dr. Deters includes his opinions and conclusions based upon the neuropsychological tests performed upon Ms. Taylor, it does not provide sufficient information about *how* the tests were conducted, *what* questions or scenarios were posed to the plaintiff, the *conditions or circumstances* of the testing and evaluations, or the *actual* data and responses collected. Without the data and test materials defendants cannot adequately evaluate or analyze the methodology employed by Dr. Deters and therefore, their ability to assess and if appropriate challenge its unreliability is undermined. Further, the Court will not be able to exercise its gate-keeping function and determine if Dr. Deters' evaluation and testing are scientifically reliable and, thus, admissible without the advance discovery of the data and materials.

**E. <u>Defendants will not be able to fairly and fully examine Dr. Deters without the requested information</u>.**

Without the test materials and data, defendants will not be able to adequately and thoroughly prepare for or examine Dr. Deters at deposition or trial. The only information disclosed by Dr. Deters regarding his cognitive evaluation of Ms. Taylor thus far are the conclusions and opinions contained in his report. Defendants cannot properly prepare to examine Dr. Deters without having the data and materials he relied upon to arrive at his opinions.

In addition, Dr. Deters will surely be examined about the test data, Ms. Taylor's

responses, and the test materials he utilized. Presumably, he will respond earnestly to these areas of inquiry and answer related questions under oath at deposition or at trial – disclosing same. If the data and materials will inevitably be disclosed, they should be disclosed in advance of Dr. Deters' deposition.

In a case of first impression, the court in Drago v. Tishman Construction Corp. of New York, 4 Misc.3d 354, 356-357, 777 N.Y.S.2d 889 (2004) held that raw data from neurological tests administered to plaintiff by plaintiff's expert could be ordered disclosed to defendant in a personal injury case after the case was on the trial calendar and after discovery had closed. The Drago court stated that the typical trial approach whereby, absent a pretrial review of raw data, the data would be presented during trial by testimony of an expert "is ill-suited to the situation presented here (because a "battery of tests" was administered) . . . To delay access to the raw data until the trial ... could be projected to lead to extensive trial delays for defense preparation ..." Id. at 357.

**F. Defendants will not be able to fully consult with their own expert without access to the requested information.**

Dr. Deters produced the test materials and data to defendants' expert, Dr. Faust, but conditioned Dr. Faust's review of the information upon Dr. Faust's agreement not to disclose the information to anyone, including defense counsel. Therefore, although Dr. Faust has been able to generally discuss with counsel the nature of the tests administered to Ms. Taylor and her level of performance, he had not been able to discuss with counsel the

responses given by Ms. Taylor to particular test questions posed to her or any other "Q and A" that occurred during the evaluation of Ms. Taylor by Dr. Deters. Defense counsel has not been able to even consult with their own expert on these issues because of the restrictions placed on Dr. Faust's review of the test materials and data.

## IV CONCLUSION

As mentioned above, plaintiffs' argument that Ms. Taylor will need seven-figure lifetime institutionalization is largely predicated on Dr. Deters' testing, but plaintiffs have refused to produce the test data and materials underlying Dr. Deters' opinions. Defendants are agreeable to a confidentiality agreement that addresses Dr. Deters' concerns. The defendants seek an order from this court for Thomas J. Deters, Ph.D. to produce to them the test data and testing materials associated with his neuropsychological evaluation of the plaintiff. The defendants will use the test data and testing materials only for purposes of preparing and presenting a defense in this litigation.

WHEREFORE, the defendants respectfully request that this Honorable Court issue an Order requiring Thomas J. Deters, Ph.D. to release all of the test data, associated testing materials, and notes related to his neuropsychological evaluations of the plaintiff, Lindsay Taylor, to defense counsel.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of June 2009, I served a true copy of this document through the ECF system, sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies to those indicated as non-registered participants.

*/s/ Jay V. Lee*
Jay V. Lee, Esq.

Respectfully Submitted,
The Defendants,

By: */s/ Jay V. Lee*

Michael W. Gallagher, BBO# 183400
Jay V. Lee, BBO# 646095
GALLAGHER & CAVANAUGH LLP
Boott Cotton Mills
100 Foot of John Street
Lowell, MA 01852
(978) 452-0522