UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LINDSAY TAYLOR, )<br>ELAINE TAYLOR AND )<br>JEFFREY TAYLOR )<br>    Plaintiffs )<br>)<br>v. )<br>)<br>SALVATORE ERNA AND GODSMACK )<br>TOURING, INC. )<br>    Defendants )<br>) | CIVIL ACTION NO.<br>08-10534-DPW |

## PLAINTIFFS' OPPOSITION TO DEFENDANT MOTION TO COMPEL THE PRODUCTION OF ALL TEST DATA AND MATERIALS OF PLAINTIFFS' NEUROPSYCHOLOGICAL EXPERT, DR. THOMAS DETERS

## I.    INTRODUCTION

The Plaintiff hereby opposes Defendants Salvatore Erna and Godsmack Touring, Inc.'s Motion to Compel raw data resulting from neuropsychological testing performed by Thomas Deters, Ph.D.  In support of their opposition, Plaintiff states as follows:

1.    **The Defendants' request requires Dr. Deters to violate the ethical rules of the American Psychological Association prohibiting the release of test materials to anyone who is not a neuropsychologist.**

2.    **The Defendant's expert, David Faust, has the full raw data and test materials, has written a report highly critical of Dr. Deters' methodology and is fully able to prepare the Defense for any cross examination.**

3.    **The Plaintiffs have offered to provide the test data but not the test materials.**

The defense requests the Court to order Dr. Deters to violate important ethical principles of the American Psychological Association ("APA") by providing test

materials to counsel.  Dr. Faust, the defense's expert, already has these materials; if it was ethical to provide these to counsel, Dr. Faust could have done so.  Instead, defense seeks the Court to order Plaintiff's expert to do what the Defense expert knows is unethical to do.  The failure of the defense to submit an affidavit, letter or any documentation by Dr. Faust speaks volumes about the necessity of providing test materials or the ethics involved in the requests.  It is important for the Court to note that Plaintiffs' counsel has never seen either the test data or the test materials.

At a hearing on July 2, 2009, the Court asked the question of why does the confidentiality agreement not protect the integrity of the tests.  In an attempt to answer the question,   If either Plaintiffs or Defense counsel knew the actual questions of the various tests, the attorney is placed in a difficult situation when the next traumatic brain injury client is going for neuropsychological tests.  The idea that an attorney can create a Chinese Wall in his mind is not realistic.  As will be shown below, these tests are developed over much time and expense.  They are only useful if people do not know what the questions are in advance.  The tests become worthless if the contents, the test materials, are available to non-psychologists.

## II.    TIMELINE

Plaintiffs produced the expert report of Thomas Deters on March 11, 2009. Shortly thereafter, Defendants requested that Dr. Deters produce the raw data that underlie his report to David Faust, Ph.D.  On March 23, 2009 Dr. Deters provided the raw data to Dr. Faust.  Contrary to Defendants' statement in their Motion[1], Dr. Deters' letter stated nothing about not sharing information with defense counsel.  Dr. Deters' letter stated to Dr. Faust as follows:

> "I am forwarding these materials with the understanding that you will treat this information in accordance with the Ethical Principles of Psychologists and Code of Conduct, and the Specialty Guidelines for Forensic Psychologists."[2]

---

[1] At the bottom of p. 3 of Defendants' Memorandum, the Defense argues that Dr. Deters "specifically advised Dr. Faust that he could not share these materials with counsel."
[2] Plaintiff attaches Dr. Deters' letter as Exhibit 1.

On May 11, 2009, Plaintiffs received the rebuttal report of Dr. Faust.  In his report, Dr. Faust makes a variety of criticisms of Dr. Deters' testing, the methodology he employed and his interpretation.[3]  **Nowhere in Dr. Faust's report does it state that he has been unable to properly prepare counsel for cross examination of Dr. Deters or that Dr. Deters' letter somehow constrains him from writing a rebuttal report**.  Further, the defense has not submitted any letter or affidavit from Dr. Faust that states he has not been or will not be able to properly prepare counsel for cross examination of Dr. Deters.

On May 26, 2009, over two months after Defendants received Dr. Deters' report, and two weeks after Dr. Faust had completed his rebuttal report, defense counsel first asked for the test materials and the test answers from Dr. Deters.[4]  Plaintiffs offered to release the test data as a compromise but not the test materials as those materials are protected.  Defendants refused said request insisting upon the testing materials.

## III.    WHY PROTECTING THE TEST MATERIALS IS IMPORTANT

Section 9.11 of the APA Code of Ethics all psychologists to "make reasonable efforts to maintain the integrity and security of test materials and other assessment techniques…" [5]  Section 9.11 define test materials as follows:

> "Manuals, instruments, protocols and test questions or stimuli and does not include test data."

The National Academy of Neuropsychology "NAN" issued a Test Security Update to interpret the APA Code of Ethics.  This paper was approved by the NAN Board of Directors on October 13, 2003 and was signed by the defense expert Dr. Faust.[6]  The NAN Test Security Update states as follows:

---

[3] Dr. Faust's report is attached as Exhibit 2.
[4] The email from defense counsel dated May 27, 2009 is attached as Exhibit 3.
[5] Section 9.04 of the same code allows the release of test data upon the signing of the release or court order.
[5] There is a clear distinction in the Codes and the Plaintiffs have offered the test data to defense but they have rejected that offer.
[6] The NAN Test Security Update is attached as Exhibit 5.

"Psychologists are instructed to release test <u>data</u> pursuant to a client/patient release...absent client/patient release, test data are to be provided only as required by law or court order. **In contrast, psychologists are instructed to make reasonable efforts to maintain the integrity and security of test <u>materials</u> and other assessment techniques...**"

NAN goes on to state as follows:

"In the course of the practice of psychological and neuropsychological assessment, neuropsychologists may receive requests from attorneys for copies of test protocols...Copying test protocols... for release to a non-neuropsychologist potentially violates the Ethical Principles of Psychologists and Code of Conduct (APA< 1992; APA 2002), by placing confidential test procedures in the public domain, and **by making tests available to persons  unqualified to interpret them** (APA, 1992; Codes 2.02, 2.06 and 2.10; APA Codes 9.04 and 9.11)...Maintaining test security is critical, because of the harm that can result from public dissemination of novel test procedures...Invalidation of tests through public exposure, and the prospect that efforts to develop replacements may fail or , even if successful, might themselves have to be replaced before too long, could serve as a major disincentive to prospective test developers and publishers, and greatly inhibit scientific and clinical advances."

As highlighted above, it is not only dangerous to provide test materials because of test security issues, it is also dangerous to provide the test materials to those who are not professionally trained to understand and interpret them.  The American Academy of Clinical Neuropsychology likewise imposes a duty upon all practicing neuropsychologists to maintain test security.[7]

Plaintiff attaches an article by Paul Kaufman.[8]  The Plaintiffs urge the Court to read the article before issuing any ruling as the article lays out the importance of protecting the test security and the fact that some states have enacted statutes prohibiting the release of test materials.

III.    **THE SUPREME COURT HAS RECOGNIZED THE NECESSITY OF PROTECTING PSYCHOLOGICAL TEST SECRECY OVER THE INTEREST OF FULL DISCLOSURE**

---

[7] The American Academy of Clinical Neuropsychology Practice Guidelines is attached as Exhibit 6.
[8] Dr. Kaufman's article is attached as Exhibit 7.

In <u>Detroit Edison Co. v. NLRB</u>,[9] 440 U.S. 301 (1979)[10], the Supreme Court was faced with a similar situation.[11]  In <u>Detroit</u>, a union was seeking to obtain the testing materials that were developed by the company Industrial psychologists as an aptitude test.  <u>Id.</u> at 302.  The union filed a grievance regarding the tests and, after the grievance was rejected by the company, the union sought arbitration. <u>Id.</u> at 306.  As part of the arbitration, the union sought the aptitude test materials.  <u>Id.</u>

The company refused citing that their psychologists were bound by American Psychological Association ethical duties to keep the test confidential. <u>Id</u> at 306-307.  The Company also argued that maintaining complete confidentiality of these materials was necessary in order to insure the future integrity of the tests.  <u>Id.</u> at 307.  The Company offered to turn the materials over to a psychologist selected by the union. <u>Id.</u> at 309.  The union refused this request and insisted that its members be able to look at the test.

The union filed a grievance with the National Labor Relations Board arguing that the test materials were necessary to properly prepare for the arbitration.  The union reasoned that the test materials were necessary to test the validity of the responses. <u>Id.</u> at 309.

---

[9] The American Psychological Association filed an amicus curare brief in favor of protecting the testing materials.

[10] The cases cited by the defense are generally not applicable to the case at bar.  In some cases, the expert agreed to provide the test materials. *See* <u>Reiner v. Warren Resort Hotels</u>, 2008 WL 5120682 (D. Mont)(October 1, 2008); <u>Schmitt v. Beverly Health and Rehabilitation Services, Inc.</u>, 1997 WL 728133 (D. Kan.)(November 19, 1997).  In some cases the data discussed was not psychological tests subject to APA guidelines or any other guidelines.  *See <u>Koyongo-Male v. South Dakota State University</u>* 2008 WL 2627699 (D. S.D.)(July 3, 2008); <u>Drago v. Tishman Construction Corporation of New York</u>, 4 Misc.3d 354, 777 N.Y.S.2d 889 (May 28, 2004)(Neurological tests are not covered by APA guidelines or any other ethical guidelines that preclude disclosure).
Defendant's reliance on <u>Rahman et al v. DeAlmeida</u>, Middlesex Superior Court, Civil Action No. 2005-00744 (August 24, 2006) is equally misplaced.  As shown in Exhibit 8, the docket sheet from Middlesex Superior Court the Court entered the <u>Rahman</u> Order without any opposition.
The only case on point is the <u>Sapone v. Grand Targhee, Inc.</u> 2000 WL 35615926 (D. Wyo)(August 9, 2000).  In that case, however, the Court apparently was not presented with the <u>Detroit</u> decision as that decision is never discussed.

[11] In addition to the test materials, the <u>Detroit</u> Court also faced the issue of past employees' scores and their confidentiality interests.

The NLRB ordered the Company to provide the test materials to the union with the understanding that the test materials be kept confidential from all third parties save for the arbitrator. Id. at 310   The NLRB reasoned that the union should be able to determine itself whether it needed an industrial psychologist to interpret the test battery and that the appropriate restrictions, to not turn over the test materials to any third party other than the arbitrator, would protect the Company's interests in test secrecy.   The NLRB was not swayed by the argument that the Board should consider the APA ethics as more important than the need for the actual test results. Id. at 311.

In overturning the NLRB as well as the 6th Circuit that upheld the NLRB,[12] the Supreme Court held that "the remedy of confidentiality does not adequately protect the security of the tests." Id. at 317.   In the case at bar, the release of the test materials, even with confidentiality agreement, necessarily damages the integrity of the tests. Id. at 316. In a case where the only issue at bar was the test adequacy, the Detroit Court even then recognized that psychological test secrecy was more important than the need for full disclosure.

## IV.     BOTH THE TEST DATA AND THE TEST MATERIALS ARE UNNECESSARY TO PREPARE A PROPER CROSS EXAMINATION

The defense has provided no compelling reason why they need to know the actual questions that comprise these test materials.  The defense has provided no compelling reason why the test data is necessary as well.  Dr. Faust has both the test materials and test data.  He has written a long critique of the methodology and interpretations given by Dr. Deters.  Nowhere in the report or in this Motion does Dr. Faust indicate how Dr. Deters' letter constrains him from properly preparing his client.

Aside from his report, Dr. Faust can fully prepare the defense for the cross examination.  Dr. Faust is able to provide the defense what cognitive function each test is designed to test, how each tests is given, what her raw score was, what her scaled score was, whether Dr. Deters administered the test appropriately, whether he interpreted the

---

[12] The Court overturned the NLRB even though the NLRB was granted broad discretion. Detroit, 440 U.S. 316.

raw score/scaled score[13] in accordance with the manual and/or accepted procedures, the test validation studies to determine whether the test has been properly validated.. He can do all of this without violating any ethical principle or revealing any proprietary information.

Plaintiffs' counsel has taken the depositions of numerous defense neuropsychologists who have tested the plaintiff. Counsel has never seen the tests materials or the raw data for that matter. Consulting with a neuropsychologist (like the defense has with Dr. Faust) has been more than sufficient to expose any flaws in the testing or inappropriate interpretations.

## V.   CONCLUSION

For the reasons stated above, the Plaintiffs request that the Court deny Defendant's Motion to Compel. In the alternative, the Plaintiffs request that Dr. Deters only be required to produce the test data as defined by the APA Guidelines and not the test materials as defined by the APA Guidelines. Lastly, the Plaintiffs request that eh Court order any materials to be produced to the Defendants to be produced to Plaintiffs' counsel.

Respectfully submitted,
The Taylor Family
By Their Attorney

Andrew M. Abraham, Esq., BBO # 631167
Paul K. Baker, Esq., BBO # 631221
BAKER & ABRAHAM, P.C.
30 Rowes Wharf
Boston, MA 02110
(617) 330-1330

Dated: July16, 2009

---

[13] The raw score is the actual number of questions right and the scaled score places the patient in a percentile.