UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LINDSAY TAYLOR,<br>ELAINE TAYLOR, and<br>JEFFREY TAYLOR,<br>          <u>Plaintiffs</u>,<br>v.<br><br>SALVATORE ERNA and<br>GODSMACK TOURING, INC.,<br>          <u>Defendants and</u><br>          <u>Third-Party Plaintiffs</u>,<br>v.<br><br>ERIC M. SARGENT,<br>          <u>Third-Party Defendant</u>. | Civil Action No. 08-10534-DPW |

**<u>DEFENDANTS' REPLY BRIEF TO PLAINTIFFS' OPPOSITION TO
MOTION OF THE DEFENDANTS TO COMPEL THE PRODUCTION
OF ALL TEST DATA AND MATERIALS OF PLAINTIFFS'
NEUROPSYCHOLOGICAL EXPERT, DR. THOMAS DETERS</u>**
(Leave to file Reply Brief granted on July 17, 2009)

On June 30, 2009, defendants, Salvatore Erna ("Mr. Erna") and Godsmack Touring, Inc. ("Godsmack") (collectively the "defendants"), filed, pursuant to Fed. R. Civ. P. 26(a)(2)(B)(ii), their Motion to Compel the Production of All Test Data and Materials of Plaintiffs' Neuropsychological Expert, Dr. Thomas Deters, and argued that (1) Fed. R. Civ. P. 26(a)(2)(B)(ii) requires that the written report of the expert contain the kind of information sought by defendants; (2) the American Psychological Association's ethical rules and code of

conduct permit the disclosure of such information; (3) Dr. Deters' concerns regarding the dissemination of copyrighted or proprietary information can be readily addressed with a protective order; (4) defendants need the raw data and testing materials to be able to determine the methodology employed by Dr. Deters and its reliability; (5) defendants will not be able to fairly depose or cross examine Dr. Deters regarding his analysis and opinions without the data that forms the bases for his opinions; and (6) defendants cannot fully consult with their own neuropsychological expert without access to the test data and materials.

On July 16, 2009, plaintiffs filed their Opposition to said motion and argued, *inter alia*, that (1) production of the test materials would violate APA ethical principles, (2) test questions in the hands of attorneys would allow such attorneys to prepare other clients for future tests, and (3) defendants failed to submit an affidavit from their expert, Dr. David Faust.  Plaintiffs also relied on a 1979 United States Supreme Court case to support their position.

With leave of Court, defendants now file this Reply Brief in order to address plaintiffs' new argument, correct misstatements of fact, and address plaintiffs' misplaced reliance on inapplicable case law.  The legal arguments advanced in opposition to defendants' motion are either without merit or simply have no application to this case.  Defendants respectfully submit that their motion should be granted and that plaintiffs/Dr. Deters should be ordered to produce the test materials and data of Dr. Deters.

# I ARGUMENT

## A. Defendants' request for test data and materials do not require Dr. Deters to violate the ethical rules of the American Psychological Association.

Plaintiffs argue that the "defense requests the Court to order Dr. Deters to violate important ethical principles of the [APA] by providing test materials to counsel." (Plaintiffs' Opposition pp. 1-2) In support of this argument, plaintiffs rely on the NAN Test Security Update (dated 10/13/03) and its instructions that "psychologists are instructed to make reasonable efforts to maintain the integrity and security of test <u>materials</u> ... consistent with such factors as law and contractual obligations." Plaintiffs also suggest that NAN warns that copying test protocols for non-neuropsychologists potentially violates APA's ethical principles. Plaintiffs fail, however, to fully set forth the NAN Security Update or NAN's position.

First, the copying of test materials is not, in and of itself, a violation of APA ethics. It is only *potentially* violative. Second, the same NAN Security Update of 2003 to which plaintiffs liberally cite goes on to state, as discussed in defendants' Motion to Compel, that "a likely and foreseeable consequence of *uncontrolled* test release is widespread circulation ..." "Consequently, *uncontrolled* release of test procedures ... jeopardizes the validity of these procedures for future use." "If a request to release test data ... places the psychologist or neuropsychologist in possible conflict with ethical principles and directives, the professional should take reasonable steps to maintain test security ... Different solutions for problematic requests for the release of test material are possible. . . Other potential resolutions involve

3

*protective arrangements or protective orders from the court*.  (See the attached addendum for general guidelines for responding to requests)."  (Emphasis added.)  In short, NAN prohibits *uncontrolled* release of test materials while recognizing that *controlled* releases of test data pursuant to protective arrangements or protective orders are viable "potential resolutions."

      The "attached addendum for general guidelines for responding to requests" referenced in the NAN Security Update first appeared as an attachment to the *Test Security* position statement of NAN dated October 5, 1999.  In the 1999 position statement addendum (*see* attached) NAN includes a flowchart as a guide for responding to requests for test materials – ultimately suggesting an arrangement by which "all parties given access to test data can assent to enter into a written agreement that contains the elements for protection of test materials.  Alternatively, the suggestion can be made that a court order be issued containing these elements..."  It is clear that, despite plaintiffs' assertions to the contrary, neither the APA Code of Ethics nor NAN *prohibit* the release of test data and materials.  To the contrary, while both NAN and the APA instruct professionals to *maintain* test security, it is clear that test security may be *maintained* by a protective order.  An Order for Dr. Deters to release test materials under a protective arrangement simply will not cause Dr. Deters to violate the APA code of ethics.  The very document that plaintiffs rely on in support of their argument against the release of test materials serves to outline the procedure by which such test materials may be released in a controlled and protected fashion.

**B. Plaintiffs' reliance on <u>Detroit Edison Co. v. NLRB</u> is misplaced.**

Plaintiffs argue that the instant case is similar to that in <u>Detroit Edison Co. v. NLRB</u>, 440 U.S. 301 (1979).  There, the NLRB found that the employer, Detroit Edison Company, violated section 8(a)(5) of the National Labor Relations Act by failing to disclose information (test materials and test scores) to the labor union on behalf of employees.  The Supreme Court reversed the NLRB's decision ordering the employer to disclose the test information.

In <u>Detroit Edison</u>, after several union employees applied to fill vacancies and all were rejected based on the employer's job classification tests, the Union requested access to the testing materials.  The employer furnished all testing materials except the test battery, applicants' test papers, and scores.  There were two issues before the Court on appeal.  The first was whether the NLRB abused its remedial discretion by ordering the employer to provide the testing materials directly to the Union and the second was whether the NLRB was correct that the employer committed an unfair labor practice by conditioning the disclosure of test scores upon written consents of the examinees.

On the first issue, the Court held that the NLRB abused its statutory discretion because it ordered the disclosure of the tests directly to the Union without providing any protection for test secrecy.  On the second issue, the Court held that the tests were administered with the express commitment that the scores would remain confidential and the employer's willingness to disclose the scores only with the examinees' consents satisfied its duties under section 8(a)(5) of the National labor Relations Act.  The <u>Detroit Edison</u> Court did not, however, address the issue

5

before this court – whether test materials and data may be disclosed with protection and under proper conditions in light of the ethical obligations of psychologists under the APA and NAN guidelines (both issued *after* Detroit Edison).

Unlike Detroit Edison where the NLRB ordered release of psychological test materials to the union membership for its unfettered review, defendants here seek access to test materials only for their counsel to be able to review it with their experts in preparation for deposition and trial. Defendants also seek access only under a protective order with a stipulation to return and/or destroy said materials at the conclusion of litigation. Unlike Detroit Edison, the party seeking disclosure is agreeable to the entry of a protective order to maintain test security and secrecy.

The Detroit Edison Court was also faced with examination of an "abuse of discretion" standard in the application of the Labor Relations Act in the context of an employer/union relationship. (In fact, the Court stated that they "granted certiorari to consider an important question of federal labor law." Id. at 304.) It did not purport to set precedent in the area of neuropsychological testing and disclosure requests for legal/litigation use.

Finally, plaintiffs fail to address defendants' argument that Fed. R. Civ. P. 26(a)(2)(B)(ii) requires that the written report of the expert "must contain," *inter alia*, "the data or other information considered by the witness in forming [his/her opinions]." This includes the test data and materials that the Federal Rules of Evidence Advisory Committee, in 1993, clearly

6

expressed was required as part of expert evidence disclosure, <u>Detroit Edison</u> notwithstanding. "'For more than three centuries it has now been recognized as a fundamental maxim that the public ... has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.'" <u>United States v. Bryan</u>, 339 U.S. 323, 331 (1950) quoting 8 J. Wigmore, Evidence § 2192, p. 64 (3d ed.1940).

**C.** **<u>Both the test materials and test data are necessary for the defense to prepare for the cross-examination of Dr. Deters.</u>**

Plaintiffs anecdotally argue that their attorney has taken numerous depositions of neuropsychologists without the aid of test materials and data and that defense counsel should be able to do the same in this case. Plaintiffs also argue that defendants' expert should be able to assist in the preparation of any cross-examination without revealing the test questions or protocols. For the reasons stated in the attached Affidavit of Dr. David Faust, *inter alia*, the test questions, protocol, and questionnaires are critical to the defense preparation of their case.

Considerable subjectivity may be involved in the scoring of questionnaires and test protocols, and without the tests themselves, one cannot fairly analyze what the examiner has done. In addition, the examiner may have made a scoring error or violated testing or scoring

procedures.  There is no way to discover such errors or examine the expert regarding such errors without the tests themselves.

Plaintiffs have offered to disclose the test scores/data only.  However, the scores/data are meaningless without a mechanism to relate them to a set of questions or stimuli.  For example, on an IQ test, Dr. Deters verbally tested Ms. Taylor and recorded her verbal responses with a series of check marks.  Plaintiffs would agree to provide defendants with the checkmarks but not the questions that elicited such responses.  In another test, a transcription task, the answer sheet consists of random numbers.  Without the test materials, such "raw data" would be without meaning or use.  Finally, in a test called the *Green's Word Memory Test,* the raw data consists of a computer printout of scores.  With just this computer-printed raw data, for example, the defendants would not be able to examine the methodology employed by Dr. Deters, whether he administered the test correctly and fairly, or whether he scored Ms. Taylor's performance properly.  The test materials are simply critical for the defendants to be able to properly and adequately prepare their case for trial.

**D.  <u>A protective order will be an adequate way to maintain test security</u>.**

In response to the Court's inquiry, plaintiffs' answered, in their Opposition, that a protective order will not protect the integrity of the tests because if the attorneys involved "knew the actual questions of the various tests, the attorney is placed in a difficult situation when the next traumatic brain injury client is going for neuropsychological tests.  The idea that an attorney

can create a Chinese Wall in his mind is not realistic. . . [The tests] are only useful if people do not know what the questions are in advance." Again, this court can safeguard against such unauthorized uses of the test materials by fashioning, in its Order, a method by which all copies of the disclosed test materials are returned to Dr. Deters or destroyed at the end of litigation. Notwithstanding plaintiffs' protests, a protective order can and will maintain the integrity of Dr. Deters' test materials in this case.

## II  CONCLUSION

For the reasons set forth above and in their Motion to Compel, defendants respectfully request that this Honorable Court issue an Order requiring Thomas J. Deters, Ph.D. to release to them all test data, responses, and scores, associated testing materials, questionnaires, protocols, stimuli, and notes related to his neuropsychological evaluations of the plaintiff, Lindsay Taylor.

Respectfully Submitted,
The Defendants,

By: _____
Michael W. Gallagher, BBO# 183400
Jay V. Lee, BBO# 646095
GALLAGHER & CAVANAUGH LLP
Boott Cotton Mills
100 Foot of John Street
Lowell, MA 01852
(978) 452-0522

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of July 2009, I served a true copy of this document through the ECF system, sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies to those indicated as non-registered participants.

    /s/  Jay V. Lee
       Jay V. Lee, Esq.