UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LINDSAY TAYLOR, | ) | |
| ELAINE TAYLOR, and | ) | |
| JEFFREY TAYLOR | ) | |
|     Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 08-10534-DPW |
| | ) | |
| SALVATORE ERNA and | ) | |
| GODSMACK TOURING, INC., | ) | |
|     Defendants and | ) | |
|     Third-Party Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ERIC M. SARGENT, | ) | |
|     Third-Party Defendant | ) | |

MEMORANDUM AND ORDER
August 3, 2009

This action arose out of a three-car collision on April 11, 2007 involving, among others, the plaintiff, Lindsay Taylor ("Taylor"); the defendants and third-party plaintiffs, Salvatore Erna ("Erna") and Godsmack Touring, Inc. ("Godsmack"); and third-party defendant, Eric M. Sargent ("Sargent"). Taylor, a rear-seat passenger in the middle vehicle, sustained brain injuries as a result of the accident and will require ongoing medical care.

The plaintiffs, Lindsay Taylor and her parents, retained Thomas Deters, Ph.D., as a neuropsychological expert and witness in this case. Dr. Deters conducted neuropsychological tests and evaluations of Lindsay Taylor on six occasions between March 2008 and August 2008. In March 2009, Dr. Deters wrote a report conveying his conclusions about Ms. Taylor's condition based his

assessment of a battery of tests, records, interviews, and affidavits.  Dr. Deters' report did not include the raw data or testing materials used in his evaluations.

The defendants argue that Dr. Deters' report, by virtue of the absence of the raw data and testing material, fails to comply with Federal Rule of Civil Procedure 26(a)(2)(B)(ii) which requires that an expert witness' report include "the data or other information considered by the witness in forming [their opinions.]"  Fed. R. Civ. P. 26(a)(2)(B)(ii).  Erna and Godsmack have moved to compel the production of raw test data and related testing material used by Dr. Deters, in his neuropsychological evaluations of the plaintiff, Taylor.

Taylor opposes the motion on three grounds: (1) that the defendants' request requires Dr. Deters to violate ethical guidelines of the American Psychological Association ("APA") prohibiting the release of test materials to anyone who is not a psychologist or neuropsychologist; (2) that the defendants' expert, also a psychologist, has been given the full raw data set and test materials, has written a report critical of Dr. Deters' methodology, and is therefore fully able to prepare the defense for Dr. Deter's cross-examination; and (3) that the plaintiffs have offered to provide the test data to defense counsel without the test materials and protocol.

Fed. R. Civ. P. 26 is intended to ensure that both parties to a suit are able to prepare for trial adequately.  "Under amended Fed. R. Civ. P. 26, which took effect December 1, 1993, all parties and the court should possess full information well in advance of trial on any proposed expert testimony or demonstrative evidence."[1]  *Robinson v. Missouri Pac. R.R.*, 16 F.3d 1083, 1089, n. 6 (10th Cir. 1994).  Among other things, the expert witness' report must include the witness' opinions, the basis and reasons therefor, and the data or other information considered by that witness in forming those opinions.  *Schmitt v. Beverly Health and Rehabilitation Svcs., Inc.*, No. 96-2537-EEO, 1997 WL 728133, at *3 (D. Kan. Nov. 19, 1997).  *See also S. Union Co. v. Sw. Gas Corp.*, 180 F. Supp. 2d 1021, 1059 (D. Ariz. 2002).

The apparent conflict[2] between the demands of the Federal

---

[1] In 1993, the Rules Advisory Committee noted the purpose of these disclosures is to ensure that the parties "have a reasonable opportunity to prepare for effective cross examination."  Fed. R. Civ. P. 26, Advisory Committee Notes 1993, Paragraph 2.

[2] Any conflict can be eliminated by court order.  The APA's Ethical Principles of Psychologists and Code of Conduct acknowledge that the ethical obligations of the professional must conform to legal directives.  Ethical Standard 1.02, Conflicts Between Ethics and Law, Regulations, or Other Governing Legal Authority directs that: "If psychologists' ethical responsibilities conflict with law, regulations or other governing legal authority, psychologists make known their commitment to the Ethics Code and take steps to resolve the conflict.  If the conflict is unresolvable via such means, psychologist may adhere to the requirements of the law, regulations, or other governing legal authority."  Ethical Standard 9.11, Maintaining Test Security directs that:

-3-

Rules and the APA's Ethical Principles has given rise to a number of court-ordered resolutions.

Some courts have ruled that, regardless of APA Ethical Guidelines and experts' concerns, Fed. R. Civ. P. 26 is clear in its requirement of full disclosure without qualification. *See Kayongo-Male v. S.D. State Univ.*, No. 04-4172, 2008 WL 2627699, at *4 (D.S.D. July 3, 2008); *Sapone v. Grand Targhee, Inc.*, No. 00-CV-020-J, 2000 WL 35615926, at *2 (D. Wyo. Aug. 9, 2000); *Drago v. Tishman Constr. Corp. of N.Y.*, 4 Misc. 3d 354, 777 N.Y.S.2d 889, 891 (2004). As to countervailing ethical considerations, a court order to disclose documents has been held to satisfy the APA Guidelines such that ethical concerns of an expert witness were said to have evaporated. *Tibbs v. Adams*, No. S-05-2335, 2008 WL 2633233, at *1-3 (E.D. Cal. June 25, 2008).

Other courts have been more deferential to the position of psychologists who express concern about the restrictions of the APA Ethical Code. *Collins v. TIAA-CREF*, No. 3:06CV304-C, 2008 WL 3981462, at *4 (W.D.N.C. Aug. 22, 2008) (holding that to order the disclosure of the testing materials would "place[] an undue burden on [the witness] in asking him to violate both his ethical and contractual obligations" and either sharing all the materials with a qualified witness for the plaintiff or transcribing

---

"Psychologists make reasonable efforts to maintain the integrity and security of test materials and other assessment techniques consistent with law and contractual obligations, and in a manner that permits adherence to this Ethics Code."

-4-

limited data for counsel were "reasonable accommodations to avoid the very serious consequence of the validity of the important tests being compromised.")

I recognize the Supreme Court in *Detroit Edison Co. v. N.L.R.B.,* 440 U.S. 301 (1979) found that compelling the psychological testing materials without any limiting conditions was erroneous.  Detroit Edison Company had administered employment related psychological aptitude testing to its union employees and in doing so, had promised confidentiality of the test results.  *Id.* at 305.  During arbitration of an employment related dispute, the union representing the workers demanded access to all the test data and materials for all examinees.  *Id.* at 307-08.  The APA explained that it was ethically bound to withhold the actual tests and individual examinees' test scores from the Union, but offered to share questions and answers with individual examinees.  *Id.* at 306.

In her brief, Taylor asserts, without specific page citation, that in *Detroit Edison*, the court recognized that the "psychological test secrecy was more important than the need for full disclosure."[3]  However, the *Detroit Edison* court's holding is more narrow.   The Court held only that "the order requiring the Company unconditionally to disclose employee scores to the

---

[3] Taylor fails to note that in *Detroit Edison*, the court was addressing disclosures in the context of arbitration, not Fed. R. Civ. P. 26 and the requirements for expert testimony in the federal courts.  *Detroit Edison*, 440 U.S. at 308.

Union was erroneous." *Id.* at 320.  This holding leaves open the possibility that a more focused and conditioned disclosure would be acceptable to the Court.

The most common resolution for this type of dispute has been some compromise between full, unconditioned disclosure and total exemption from the Federal Rules of Civil Procedure.  One court found that testing materials need only be turned over to opposing counsel's qualified expert witness. *Chiperas v. Rubin*, No. 96-130, 1998 WL 765126, at *1, 2 (D.D.C. Nov. 3, 1998).  Other courts have resolved the conflicting interests by issuing a protective order.  *See Reiner v. Warren Resort Hotels, Inc.*, No. 06-173, 2008 WL 5120682, at *1 (D. Mont. Oct. 1, 2008); *Schmitt*, 1997 WL 728133, at *4.

I acknowledge the importance of preserving the integrity of test materials and evaluative methods employed by Dr. Deters. Adequate protection of this information can, however, be achieved in a manner consistent with the mandates of the Federal Rules.  I find that while Erna and Godsmack, through their expert, have a right to review both the raw data and the test materials, Dr. Deters' disclosure should be conditioned on execution of the Non-Disclosure Agreement protective order proposed by the defendants.[4]

_____

[4] I note that Dr. Deters, for his part, has made every effort to comply with the APA's Ethical Guidelines and this court's order will not force a violation.  The order to compel, coupled with the requirement of a protective order will provide an

-6-

Accordingly, I allow the defendant's motion to compel (Doc. 34) conditioned upon execution of defendant's proposed protective order (Doc. 34-3).

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

_____

accommodation of the parties' competing concerns before the court, while as a collateral matter protecting Dr. Deters' professional obligations. *See generally* Note 2 *supra.*